UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTONIO LYNN FLUKER, JR.,

        Plaintiff,

v.

TRANSUNION, LLC, and
EQUIFAX INFORMATION SERVICES, LLC

        Defendants.
_____/

Case No. 1:22-cv-12240

Honorable Thomas L. Ludington
United States District Judge

Honorable Patricia T. Morris
United States Magistrate Judge

**OPINION AND ORDER (1) OVERRULING PLAINTIFF'S OBJECTIONS IN PART; (2) SUSTAINING PLAINTIFF'S OBJECTIONS IN PART; (3) ADOPTING REPORT AND RECCOMENDATION IN PART; (4) OVERRULING REPORT AND RECOMMENDATION IN PART; (5) GRANTING DEFENDANT TRANSUNION'S MOTION FOR SUMMARY JUDGMENT; (6) DISMISSING ALL CLAIMS AGAINST TRANSUNION WITHOUT PREJUDICE; AND (7) DENYING PLAINTIFF'S MOTION TO AMEND AS MOOT**

After being convicted of identity theft, wire fraud, and money laundering, Plaintiff Antonio Lynn Fluker, Jr. filed a *pro se* complaint against Defendants TransUnion, LLC (TransUnion) and Equifax Information Services, LLC (Equifax) alleging both violated the Fair Credit Reporting Act (FCRA) in separate and distinct ways. This Opinion and Order addresses Plaintiff's claims against TransUnion only, as all claims against Equifax are stayed pending the certification of a putative class action in the Northern District of Georgia.

Plaintiff alleges TransUnion violated the FCRA by (1) failing to reasonably investigate two inquiries on Plaintiff's credit report, which Plaintiff contends are fraudulent; and (2) failing to reasonably ensure the accuracy of Plaintiff's credit report. TransUnion filed a motion for summary judgment, which was referred to Magistrate Judge Patricia T. Morris. Judge Morris thereafter issued a report (R&R) which concluded that Plaintiff lacks Article III standing to sue, and

accordingly recommended this Court grant TransUnion's Motion for Summary Judgment and dismiss all claims against it with prejudice. Currently before this Court are Plaintiff's eight objections to the R&R. As explained below, five objections will be overruled and three will be sustained in part. Judge Morris's R&R will be largely adopted, TransUnion's Motion for Summary Judgment will be granted, all claims against TransUnion will be dismissed without prejudice, and Plaintiff's pending Motion to Amend will be denied as moot.

I.

A.

Although a *pro se* Plaintiff in the above-captioned civil case, Antonio Lynn Fluker is a serial fraudster who has been collectively convicted—throughout two separate criminal proceedings—of identity theft, wire fraud, and money laundering. Not only is Plaintiff's criminal history relevant insofar as the criminal charges historically asserted *against him* mirror the allegations he now asserts *against TransUnion*, but also because the facts giving rise to this civil suit stem from Plaintiff's criminal pretrial detention.

In 2007, Plaintiff fraudulently opened a credit card account with Bank of America using the personal identification information of an unknowing victim. *See United States v. Fluker*, 09-cr-20614 (E.D. Mich. 2010), ECF No. 16 at PageID.28–29. Plaintiff pleaded guilty to one count of identity theft and, in November 2010, was accordingly sentenced to 105 months' imprisonment and three years of supervised release. *See United States v. Fluker*, 09-cr-20614 (E.D. Mich. 2010), ECF Nos. 16; 32.

In October 2020, while on supervised release, Plaintiff was named in an additional Criminal Complaint. *United States v. Fluker*, 20-mj-30442 (E.D. Mich. 2020), ECF No. 1.[1] The

---

[1] This case was later merged with case 21-cr-20331.

subsequent superseding indictment alleged Plaintiff defrauded the Government of nearly $600,000 by submitting false loan applications under the Paycheck Protection Program and Economic Injury Disaster Loan Program during the COVID-19 pandemic, and accordingly charged Plaintiff with ten counts of wire fraud, four counts of bank fraud, one count of money laundering, and one count of aggravated identity theft. *United States v. Fluker*, 21-cr-20331 (E.D. Mich. 2020), ECF No. 43. Although Plaintiff ultimately pleaded guilty to one count of wire fraud and one count of money laundering and was sentenced to 135 months' imprisonment, *United States v. Fluker*, 21-cr-20331 (E.D. Mich. 2020), ECF No. 157 at PageID.964–65—the factual background relevant to this *civil* case occurred while Plaintiff was detained and awaiting trial on this, his second, criminal case.

**B.**

In the summer of 2022, while detained pretrial, Plaintiff alleges a family member forwarded him a letter, originally sent to his home address, informing him of two "hard inquiries" on his TransUnion credit report. ECF No. 63-4 at PageID.532–33. Notably, Plaintiff does not have a copy of the letter and cannot identify its sender, the date it was sent, nor the family member that forwarded it to him. *Id.*

Nevertheless, on June 15, 2022, Plaintiff prepared a Federal Trade Commission (FTC) "Identity Theft Report" and alleged that four accounts were fraudulently opened in his name without his authorization. ECF No. 63-7 at PageID.572–73. First, he alleges that a J.P. Morgan Chase Bank account was fraudulently opened in his name in April 2020. *See id.* at PageID.571. Second, he alleges a "LVNV Funding" account was fraudulently opened in his name in November 2019. *Id.* Third, he alleges a Bank of America account was fraudulently opened on June 10, 2022. *Id.* at PageID.572. And, finally, he alleges a Capital One account was fraudulently opened on June 14, 2022. *Id.* Nothing in Plaintiff's self-prepared report explained *why* he believed these accounts

were fraudulently opened, nor *how* he learned the accounts were opened. *See* ECF No. 63-4 at PageID.533 (noting Plaintiff never received any communication from Bank of America or Capital One).

Nevertheless, Plaintiff sent this self-prepared Identity Theft Report to TransUnion, as an attachment to a letter asking TransUnion to "remove the fraudulent items that appear[ed] on [his] credit report." ECF No. 63-7 at PageID.570. Curiously—and importantly—Plaintiff's letter was dated June 8, 2022, *two days before* he alleges the Bank of America account was fraudulently opened in his name and *six days before* he alleges the Capital One account was fraudulently opened in his name. *Id.* Plaintiff sent this letter to TransUnion three times, and it was received by TransUnion on June 21, June 28, and July 5, 2022. *See* ECF Nos. 63-7; 63-10; 63-11. The letters received by TransUnion on June 28 and July 5 also included an attached Flint Police Department Incident Report—prepared by Plaintiff himself on June 17, 2022—which alleged, without any support, that accounts were fraudulently opened in his name. ECF Nos. 63-10 at PageID.604; 63-11 at PageID.616. But, unlike the FTC Identity Theft Report Plaintiff filled out on June 15, his June 17 Incident Report alleges only that the J.P Morgan Chase Bank and LVNV accounts were fraudulently opened in his name. *See id.* Plaintiff's Incident Report says nothing about a Capital One or Bank of America account. *See id.* The Flint Police Department took no action on Plaintiff's Incident Report. ECF No. 63-4 at PageID.535.

TransUnion and Plaintiff agree that *only* the alleged June 2022 Bank of America and Capital One inquiries are at issue in this case. *See* ECF Nos. 63 at PageID.472; 67 at PageID.643–44. But Plaintiff's TransUnion credit report does not reflect *any* inquiry made by Bank of America in 2022. ECF No. 63-8 at PageID.594–95 (noting the most recent Bank of America inquiry occurred in October 2020); *see also* ECF No. 63-6 at PageID.562. And although Plaintiff's credit

report does reflect Capital One's June 14, 2022 inquiry in connection with a Niemen Marcus account, *id.* at PageID.594, his credit report also reflects that he "had a Neiman Marcus credit card with Capital One that remained in good standing until it was paid and closed in July 2020." ECF No. 63 at PageID.473; *see also* ECF No.63-8 at PageID.583 (noting that Plaintiff's "Capital One / Neiman Marcus" account was opened in 2017).

Accordingly, on July 11, 2022, after investigating the allegations in Plaintiff's letter—and the attached self-prepared FTC Identity Theft Report and Flint Police Incident Report—TransUnion denied Plaintiff's request to remove the disputed inquiries from his credit report. ECF No. 63-12 at PageID.620. TransUnion specifically concluded (1) Plaintiff's request was made in error; (2) Plaintiff's request misrepresented material facts within his request; "and/or" (3) Plaintiff obtained goods, services, or money "as a result of the transaction issue." *Id.* TransUnion notified Plaintiff that it had "opened a reinvestigation of the disputed information," and would "contact the source of the disputed information to advise them of [Plaintiff's] dispute" and "ask them to verify the accuracy of the reported information." *Id.* Although TransUnion's letter explained it would notify Plaintiff about the results of the reinvestigation, *see id.*, it was seemingly terminated. *See* ECF No. 63 at PageID.479–83 (arguing TransUnion's termination of reinvestigation was reasonable).

## C.

On September 22, 2022, Plaintiff filed a *pro se* complaint alleging that TransUnion violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681, *et seq.*[2] *See* ECF No. 1 at PageID.6–7.

---

[2] Importantly, Plaintiff also sued Defendant Equifax Information Services, LLC (Equifax) alleging it violated the FCRA in April 2022 by erroneously reporting Plaintiff's credit score was 25 or more points lower than it should have been due to a "computer glitch." ECF No. 1 at PageID.8. But Plaintiff's separate and distinct claims against Equifax have been stayed pending the certification

Specifically, Plaintiff alleges TransUnion (1) failed to reasonably reinvestigate Plaintiffs' complaints of identity theft and fraudulent inquiries; and (2) failed to reasonably ensure the accuracy of his credit report. ECF No. 1 at PageID.6–7. Plaintiff seeks $250,000 in actual damages and $2,500,000 in punitive damages from TransUnion, and alleges both reduced credit-worthiness and emotional distress, manifested by "headaches" and "loss of sleep provoked by worries that [he] will be unable to obtain new credit due to the inaccurate reporting." *Id.* at PageID.4, 7. All pretrial matters were referred to Magistrate Judge Patricia T. Morris. ECF No. 4.

On January 12, 2024, TransUnion filed a motion for summary judgment arguing (1) it cannot be liable under the FCRA reporting provision because it accurately reported all inquiries on Plaintiff's credit report; (2) it cannot be liable under the FCRA reinvestigation provision because it reasonably believed Plaintiff's request was meritless; and (3) Plaintiff has not shown sufficient harm to recover under the FCRA, generally. *See* ECF No. 63.

On April 1, 2024, Judge Morris issued a report (R&R) recommending this Court grant TransUnion's Motion for Summary Judgment, ECF No. 63, and dismiss Plaintiff's claims against TransUnion with prejudice for lack of subject matter jurisdiction. ECF No. 71. Although not directly argued by TransUnion, Judge Morris's R&R focuses largely on Article III standing. *See id.* at PageID.885 ("Although Transunion centers its briefing on the merits . . . its discussion of [Plaintiff's] ability to show damages raises questions concerning his standing to enforce the FCRA."). Judge Morris concluded Plaintiff did not have standing to sue TransUnion for two reasons.

---

of a putative class action, filed in the Northern District of Georgia, involving "identical" claims. ECF No. 26 at PageID.155; *see also Nydia Jenkins v. Equifax*, No. 1:22-cv-03072 (N.D. Ga. 2022).

First, Judge Morris concluded Plaintiff had not shown TransUnion caused him any *economic* or *monetary* harm. *Id.* at PageID.888. Plaintiff argued TransUnion's alleged reporting and reinvestigation failures reduced his credit worthiness, and supported this argument with two letters from Synchrony Bank. *See* ECF No. 67-2 at PageID.839–44. The first letter, sent on April 1, 2022, denied Plaintiff's requests for a Sam's Club Credit Card. *Id.* at PageID.839. The second letter, sent on June 16, 2023, closed Plaintiff's Synchrony Bank account. *Id.* at PageID.842. But Judge Morris found these letters insufficient because (1) the first *predated* the alleged fraudulent inquiries by over two months; (2) the second *postdated* Plaintiff's Complaint by nine months; and (3) neither specifically referenced the disputed, allegedly fraudulent inquiries at issue as reasons for the credit card denial or account closure. ECF No. 71 at PageID.886–88; *see also id.* at PageID.882; ECF No. 67-2 at PageID.839 (noting the April 1, 2022 credit-card denial was based on the significant "number of recent credit inquiries"), PageID.842 (noting Plaintiff's account was closed on June 13, 2023 because "balances on [his] bankcards [we]re too high").

Second, Judge Morris concluded Plaintiff's alleged *non-economic* damages were insufficiently concrete and particularized because he did not "reasonably explain how the presence of two inaccurate hard inquiries could cause mental distress, particularly when" (1) "[t]here are at least [35] other hard inquiries in his TransUnion file" and, (2) he was recently sentenced to more than ten years' imprisonment and hard inquiries—even if fraudulent—only remain on a credit report for two years. *See id.* at PageID.888, 897 n. 7, 899 (noting Plaintiff "very well may have no need for credit for the next decade").

Plaintiff filed eight objections to Judge Morris's R&R on April 23, 2024. ECF No. 74.

## II.

Under Civil Rule 72, a party may object to and seek review of a magistrate judge's report and recommendation. *See* FED. R. CIV. P. 72(b)(2). The parties must state any objections with specificity within a reasonable time. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted). Any objection which fails to identify specific portions of the R&R will not be reviewed. *See Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) ("A general objection to the entirety of the magistrate's report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review[.]"); *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004) ("A general objection . . . is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context."). Additionally, parties cannot "raise at the district court stage new arguments or issues that were not presented" before the R&R was issued. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

If a party makes a timely, specific objection, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3). When reviewing a report and recommendation *de novo*, this Court must review at least the evidence that was before the magistrate judge. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, this Court is free to accept, reject, or modify the Magistrate Judge's findings or recommendations. FED. R. CIV. P. 72(b)(3); *Peek v. Comm'r of Soc. Sec.*, No. 1:20-CV-11290, 2021 WL 4145771, at *2 (E.D. Mich. Sept. 13, 2021).

## III.

Each of Plaintiff's eight objections, ECF No. 74, will be addressed in turn.

A.

Plaintiff first objects, broadly, to "Magistrate Morris['s] interpretation of the present issues of standing" but does not explain why he believes Judge Morris's "interpretation" was incorrect. *Id.* at PageID.915. Thus, Plaintiff's first objection will be overruled for lack of specificity. *See Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004) (noting that a "general objection" which does "nothing more than state a disagreement with a magistrate's suggested resolution" is "not sufficient to alert the court to alleged errors" and is improper).

B.

Plaintiff's second objection alleges Judge Morris misstated the factual record. When Judge Morris was discussing the letters Plaintiff provided from Synchrony Bank to support his reduced credit-worthiness argument, Judge Morris noted that the first letter, sent to Plaintiff on April 1, 2022, "states that Synchrony made its decision in reliance on a credit report issued by Equifax, not TransUnion." ECF No. 71 at PageID.887 (citing ECF No. 67-2 at PageID.839). Plaintiff argues this statement is factually inaccurate. ECF No. 74 at PageID.915–16.

As TransUnion concedes, "Plaintiff is correct." ECF No. 75 at PageID.925. Contrary to Judge Morris's finding, neither Synchrony Bank letter references Equifax. *See* ECF No. 67-2 at PageID.839–43. To the contrary, both letters note that Synchrony Bank based its decision—to deny Plaintiff a credit card and close Plaintiff's account—on information provided by TransUnion. *See id.* at PageID.839, 843.

However, this factual inaccuracy is immaterial. Even though the letters referenced TransUnion, they do not plausibly provide Plaintiff with Article III standing because, as Judge Morris correctly concluded, the first letter notifying Plaintiff of the denial of his credit-card application was sent to Plaintiff *two months before* he alleges inaccurate inquiries were listed on

his TransUnion credit report. *See* ECF No. 67-2 at PageID.839; *see also* ECF No. 71 at PageID.882. The second letter, notifying Plaintiff that his bank account would be closed, was sent to Plaintiff *nine months after* he filed his Complaint, *see* ECF No. 67-2 at PageID.842, and, as Judge Morris notes, "therefore could not have been one of the instances of 'denied credit' Fluker alluded to in his complaint." ECF No. 71 at PageID.887. Moreover, on *de novo* review, this latter letter noted that Synchrony Bank decided to close Plaintiff's account, not because of any inquiries on Plaintiff's credit report, but because Plaintiff's account balance was too high. *Compare* ECF No. 67-2 at PageID.839 (denying Plaintiff's credit card request—two months before the disputed inquiries at issue—because of the "number of recent credit inquiries" within Plaintiff's credit report) *with* ECF No. 67-2 at PageID.842 (closing Plaintiff's account because the "balances on [his] bankcards [we]re too high").

Thus, Plaintiff's second objection will be sustained in part, to the extent it correctly identified a factual misstatement within the R&R. However, because the misstatement was immaterial to Judge Morris's correct conclusion that Plaintiff has not identified sufficiently concrete economic injury for Article III standing, the objection will be overruled in all other respects.

## C.

Plaintiff's third objection is somewhat similar to his second. In his third objection, Plaintiff argues the Synchrony bank letters sufficiently show TransUnion harmed him in a "concrete" way because a reasonable factfinder could infer from the letters that TransUnion disseminated information to Synchrony Bank and argues Judge Morris erred in concluding to the contrary. ECF No. 74 at PageID.916-17.

But Plaintiff misinterprets Judge Morris's R&R. Judge Morris correctly held, in agreement with Plaintiff, that a factfinder could infer that TransUnion disseminated his credit report which contained the allegedly fraudulent Capital One inquiry. ECF No. 71 at PageID.889 (noting that TransUnion's own definition of "credit inquiry" included *providing* a customer's information to a user, in addition to a user *requesting* it). But Judge Morris also correctly held that this was insufficient for Article III standing because Plaintiff had no *additional* concrete injury. *See id.* at PageID.888-900.

Plaintiff cites *Transunion LLC v. Ramirez* for the proposition that mere evidence of dissemination or reporting is sufficient to establish Article III standing. ECF No. 74 at PageID.916. But Judge Morris's R&R thoroughly explained *Ramirez*—which is not nearly as broad as Plaintiff suggests. After explaining background law regarding whether statutory violations themselves can establish Article III standing, Judge Morris noted:

> *Ramirez* examined whether a reporting agency's failure to follow reasonable procedure to ensure accurate credit reports constituted a concrete injury by comparing the statute to the tort of defamation. [*TransUnion LLC v. Ramirez*, 594 U.S. 413, 432 (2021))]. In *Ramirez*, a class of 8,815 innocent consumers who shared names with "terrorists, drug traffickers, or other serious criminals" in a list maintained by the Treasury Department's Office of Foreign Assets Control ("OFAC") alleged that TransUnion violated § 1681e(b) after adding an "alert" to their credit files describing them as "potential match[es]" with criminals and terrorists on the OFAC list. *Id.* at 418–21. Only for 1,853 of the class members, however, did TransUnion share this information with third-party creditors. *Id.* at 432–34. Analogizing § 1681e(b) to defamation, the Court reasoned that the remaining class members suffered no reputational injury because the damaging statements were not "published" to their creditors. *Id.*

ECF No. 71 at PageID.895.

Judge Morris went on to note that, even though one could infer TransUnion reported the contested Capital One inquiry, Plaintiff—unlike the 1,853 class members in *Ramirez* who were subject to additional, reputational injury because of TransUnion's reporting—showed no such

*additional* injury sufficient for Article III standing. *Id.* at PageID.894–95 ("To be sure, [Plaintiff] has some evidence that TransUnion reported the . . . hard inquiries to a few of his creditors. . . . But [Plaintiff] presents no evidence that this reporting had any negative financial consequences[, nor harmed his reputation]."), PageID.895 n. 5 ("*Ramirez* only held that publication was *necessary* to establish a concrete injury—not that publication was *sufficient* to establish a concrete injury." (emphasis in original)).

Judge Morris correctly concluded that Plaintiff lacked Article III standing to pursue his claims against TransUnion. Accordingly, Plaintiff's third objection will be overruled.

**D.**

In his fourth objection, Plaintiff argues Judge Morris "fail[ed] to conduct an appropriate analysis relating to standing of [his] 1681(i) [reinvestigation] claim" because she "base[d] her [standing] decision [on a] third party publication . . . requirement" when, in Plaintiff's view, "the plain language of the FCRA contains no requirement that the disputed information be published to a third party[.]" ECF No. 74 at PageID.917. But Judge Morris did not base her conclusion that Plaintiff lacks Article III standing on Plaintiff's failure to satisfy any "publication requirement." Indeed "third party publication" is not discussed within the R&R whatsoever, and Plaintiff does not identify any specific portion of the R&R he otherwise objects to. *See generally* ECF No. 71. Plaintiff's fourth objection will accordingly be overruled.

Moreover, to the extent Plaintiff separately argues in this objection that TransUnion's alleged "failure to investigate," in violation of § 1681(i), is—in it of itself—a "concrete injur[y] to establish standing," ECF No. 74 at PageID.917, Plaintiff is mistaken and his objection will still be overruled. As thoroughly explained in Judge Morris's R&R, Plaintiff must show more than a "bare procedural violation" to have standing to sue TransUnion under *both* the reporting and

reinvestigation provisions of the FCRA. *See* ECF No. 71 at PageID.885–90; *see also Ricketson v. Experian Info. Sols., Inc.*, 266 F. Supp. 3d 1083, 1090 (W.D. Mich. 2017) (holding plaintiff had Article III standing to pursue § 1681i reinvestigation claim only because, in addition to the alleged statutory violation, plaintiff plausibly suffered *emotional distress*, and *risk of future credit harm* as a result of the alleged unreasonable reinvestigation). And although Plaintiff *alleged* in his complaint, broadly and conclusively, that TransUnion's alleged violations of the FCRA caused him this necessary, additional harm in the form reduced credit worthiness and emotional distress, ECF No. 1 at PageID.6–8, Judge Morris rightfully rejected these allegations as wholly unsupported. ECF No. 71 at PageID.893–900; *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (noting that, for summary judgment purposes, a plaintiff "can no longer rest on 'mere allegations'" of standing and, instead, must set forth specific supporting facts, affidavits, or other evidence) (quoting FED. R. CIV. P. 56(e))).

**E.**

In his fifth objection, Plaintiff argues Judge Morris erroneously concluded that Plaintiff suffered insufficient monetary harm to establish Article III standing because "he spent on average $10.00 per dispute for the cost of postage of mailing his disputes to TransUnion[.]" ECF No. 74 at PageID.917-18. But this argument was not presented before Judge Morris, so Plaintiff's objection will be overruled.[3] *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

---

[3] To the extent Plaintiff *plausibly* raised the argument in response to TransUnion's Motion for Summary Judgment, ECF No. 67 at PageID.668 (arguing he "suffered significant wasted time and financial resources in futile attempts to dispute the inquiries with Trans[U]nion"), Plaintiff has not provided any specific supporting facts or evidence that he, indeed, paid "$10 per dispute for the cost of postage" to mail his disputes to TransUnion. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (noting that, for summary judgment purposes, a plaintiff "can no longer rest on 'mere allegations'" of standing and, instead, must set forth specific supporting facts, affidavits, or other evidence (quoting FED. R. CIV. P. 56(e))). Further, it is notable that Plaintiff mailed the *same dispute* to TransUnion on three separate occasions. *See* ECF Nos. 63-7; 63-10; 63-11.

**F.**

In Plaintiff's sixth objection, he argues Judge Morris mistakenly concluded that "wasted time" is not a sufficient concrete injury to establish Article III standing. ECF No. 74 at PageID.918.

When rejecting Plaintiff's allegations of emotional distress and economic injury, Judge Morris noted the following:

> Relying on *Losch v. Nationstar Mortg., LLC*, 995 F.3d 937, 943 (11th Cir. 2021), [Plaintiff] argues that the time he "wasted" attempting to correct his credit file constitutes a concrete injury. (ECF No. 67, PageID.668–69). But [Plaintiff] cites no binding authority for this proposition, and allowing [Plaintiff] to proceed on the theory that his efforts to enforce a statutory violation were themselves concrete harm would, in effect, enable him to circumvent his obligation to show more than a mere legal infraction of the FCRA. *See Reimer v. LexisNexis Risk Solutions*, No. 3:22cv153, 2022 WL 4227261, at *9 (E.D. Va. Sept. 13, 2022) ("A bare allegation of lost time alone fails to support a finding of a concrete harm for standing purposes."). A plaintiff who suffered no concrete injury from a legal infraction cannot obtain standing simply by making extrajudicial efforts to enforce its statutory rights. Such an artificial effort to obtain standing would undercut *Ramirez*'s holding that a statutory violation alone is not enough to establish a concrete injury. *See Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 825 (5th Cir. 2022); *Brunett v. Convergent Outrsourcing, Inc.*, 982 F.3d 1067, 1069 (7th Cir. 2020) (holding that "consult[ing]" with "counsel" is not a concrete harm by itself).

ECF No. 71 at PageID.899–900, n. 8.

In his sixth objection, Plaintiff argues that Sixth Circuit precedent compels the conclusion that his *allegations* of "wasted time" sufficiently establish his Article III standing. ECF No. 74 at PageID.918–19. Although Sixth Circuit precedent, contrary to this R&R footnote, suggests that wasted time, *in certain circumstances*, may suffice as an "injury in fact" to confer Article III standing, no such circumstances exist here.

In *Huff v. TeleCheck Services, Inc.*, a plaintiff argued that a check-verification company inaccurately reported his credit file, in violation of the FCRA, by omitting that his driver's license was linked to bank accounts and associated transactions. 923 F.3d 458, 461–62 (2019). But the

district court, on the corporate defendant's motion for summary judgment, dismissed Huff's complaint for lack of Article III standing. *See id.* at 463–69. In affirming, the Sixth Circuit noted that, although "wasted time" *could* constitute an injury-in-fact sufficient to confer Article III standing to a plaintiff pursing statutory violations, Huff did not allege his time was wasted by the alleged inaccurate reporting. *Id.* at 463.

Here, unlike in *Huff*, Plaintiff alleged that TransUnion's alleged inaccurate reporting wasted his time. ECF No. 67 at PageID.668–69. But Plaintiff still lacks Article III standing; not because "wasted time" categorically cannot confer standing, but because Plaintiff has not supported his "wasted time" allegations whatsoever. *See Thompson v. Equifax Information Services, LLC*, 441 F. Supp. 3d 533, 542 (E.D. Mich. 2020) ("This matter is before the Court on [d]efendant's motion for summary judgment. Therefore while [p]laintiff's *allegations* of [qualifying Article III injury] may have been sufficient to confer standing at the motion to dismiss stage," they are insufficient at summary judgment, where plaintiff must instead support standing allegations with "specific facts[.]" (internal quotations omitted) (emphasis in original) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992))).

In sum, Plaintiff's sixth objection will be sustained to the extent it correctly notes that Sixth Circuit precedent suggests wasted time, coupled with an alleged statutory violation, may suffice as an injury-in-fact to confer Article III standing. But the objection will be overruled in all other respects, because, although Plaintiff *alleged* TransUnion wasted his time, he has not shown any "specific facts" in support.

## G.

In Plaintiff's seventh objection, he argues he sufficiently presented evidence of emotional distress, and that Judge Morris erred in reaching the opposite conclusion. ECF No. 74 at

PageID.919. Judge Morris did not err. As with all of Plaintiff's alleged injuries, he says much but shows little.

Plaintiff argues his alleged "headaches, loss of sleep, stomach aches, anxiety, and depression" are "identical to other litigants in this circuit to which this court has found to confer Article III standing." *Id.* Judge Morris did not hold otherwise, and this Court does not disagree. But Plaintiff has shown no "specific facts" in support of these alleged symptoms. To the contrary, Plaintiff admitted he has no documentation to support his emotional distress claims and has never "been seen by a physician or other medical provider" for these alleged injuries. ECF No. 63-4 at PageID.532. Plaintiff's seventh objection will accordingly be overruled.

## H.

In his eighth and final objection, Plaintiff argues Judge Morris erred in recommending the dismissal of his claims against TransUnion *with prejudice*, because her R&R focused on Article III standing rather than the merits of TransUnion's Motion for Summary Judgment. ECF No. 74 at PageID.920. Plaintiff is correct, and his final objection will be sustained.

The Sixth Circuit has "consistently held that a dismissal for lack of subject matter jurisdiction, including lack of constitutional standing under Article III, mandates a dismissal *without prejudice*." *Marks v. Schafer & Weiner, PLLC*, No. 20-11059, 2022 WL 866836, at *5 (E.D. Mich. Mar. 23, 2022) (emphasis added) (collecting cases). Indeed, a dismissal for lack of standing is jurisdictional, rather than a decision on the merits. *Id.*; *see also Gerber v. Herskovitz*, 14 F.4th 500, 505 (6th Cir. 2021).

TransUnion, recognizing this general rule, argues an exception exists for cases in which it is "plainly unlikely that the plaintiff will be able to cure the standing problem." ECF No. 75 at PageID.930 (citing *First Annapolis Bancorp, Inc. v. United States*, 109 Fed. Cl. 646, 649 (2013)

and *Marks*, 2022 WL 866836, at *5). But this exception is incredibly narrow, and only applies in the "extraordinary" or "unique" case in which there is "no pleading defect to cure that would confer standing." *Marks*, 2022 WL 866836, at *5 (citing *Thompson v. Love's Travel Stops & Country Stores, Inc.*, 748 F. App'x 6 (6th Cir. 2018) and *Stehrenberger v. JPMorgan Chase Bank, N.A.*, No. 2:12-CV-874, 2012 WL 5389682 (S.D. Ohio Nov. 2, 2012)). And the exception is inapplicable here, where Plaintiff—although unlikely—could theoretically cure his Article III standing deficiencies by supporting, through specific facts and evidence, his allegations of emotional distress or economic injury tied to his allegations that TransUnion violated the FRCA.

Accordingly, Plaintiff's eighth objection will be sustained, and the R&R will be modified such that the dismissal of Plaintiff's Complaint, ECF No. 1, will be without prejudice.

## IV.

Just before filing his objections to the R&R, Plaintiff filed a *second* motion to amend his Complaint. ECF No. 72. Because Plaintiff's proposed amendments relate only to TransUnion—a party dismissed by this Opinion and Order—Plaintiff's Motion for leave to amend his Complaint will be denied as moot. *See* ECF No. 72 at PageID.906.

But, even if Plaintiff's Motion to Amend was not denied as moot, it would be denied on the merits. Plaintiff's proposed amended complaint does not add any new Defendants and does not assert any new legal claims or seek any new forms of relief. Instead, it adds *only* that Plaintiff's "Synchrony Bank" account was closed on June 13, 2023 "due to the number of inquiries within [P]laintiff's TransUnion credit file." *Id.* But this additional alleged *fact* does not change the outcome—that Plaintiff lacks standing to sue TransUnion for an alleged violation of the FCRA. *See* ECF No. 71 at PageID.900 ("At bottom, [P]laintiff can point to no evidence of a pecuniary loss that is 'fairly attributable' to TransUnion."). Indeed, as explained *supra* Section III.B, the

second Synchrony letter reflects that Plaintiff's account was closed due to Plaintiff's high account *balances*, not because of the inquires Plaintiff alleges TransUnion failed to investigate and misreported. *See* ECF No. 67-2 at PageID.842. Accordingly, even if Plaintiff's Motion to Amend was not moot, it would be denied as futile. *See Shupe v. Rocket Companies, Inc.*, No. 1:21-CV-11528, 2024 WL 416377, at *7 (E.D. Mich. Feb. 5, 2024) (noting proposed pleading amendments are properly denied as futile when the amendment would not survive a motion to dismiss).

V.

Accordingly, it is **ORDERED** that Plaintiff's First, Third, Fourth, Fifth, and Seventh Objections to the Report and Recommendation, ECF No. 74, are **OVERRULED**.

Further, it is **ORDERED** that Plaintiff's Second Objection, ECF No. 74, is **SUSTAINED IN PART**, to the extent it identifies factual error within the Report and Recommendation.

Further, it is **ORDERED** that Plaintiff's Second Objection, ECF No. 74, is **OVERRULED IN PART**, to the extent that the identified factual error is immaterial.

Further, it is **ORDERED** that Plaintiff's Sixth Objection, ECF No. 74, is **SUSTAINED IN PART**, to the extent it correctly notes Sixth Circuit precedent holds that "wasted time" may, in certain cases, serve as an injury-in-fact to convey Article III standing.

Further, it is **ORDERED** that Plaintiff's Sixth Objection, ECF No. 74, is **OVERRULED IN PART**, to the extent it argues the Report and Recommendation erroneously rejected Plaintiff's "wasted time" injury as insufficiently supported.

Further, it is **ORDERED** that Plaintiff's Eighth Objection, ECF No. 74, is **SUSTAINED**.

Further, it is **ORDERED** that the Report and Recommendation, ECF No. 71, is **OVERRULED IN PART,** to the extent it (1) erroneously noted that one of the Synchrony Bank letters provided by Plaintiff identified Equifax; (2) erroneously concluded that Sixth Circuit

precedent does not recognize, in certain cases, "wasted time" as a sufficient injury-in-fact for Article III standing purposes; and (3) erroneously recommended a dismissal of Plaintiff's claims against TransUnion, ECF No. 1, with prejudice.

Further, it is **ORDERED** that the Report and Recommendation, ECF No. 71, is **ADOPTED IN PART,** in all other respects.

Further, it is **ORDERED** that Defendant TransUnion's Motion for Summary Judgment, ECF No. 63, is **GRANTED**.

Further, it is **ORDERED** that all of Plaintiff's claims against Defendant TransUnion, ECF No. 1, are **DISMISSED WITHOUT PREJUDICE**.[4]

Further, it is **ORDERED** that Plaintiff's Motion for Leave to File Supplemental Complaint, ECF No. 72, is **DENIED AS MOOT**.

**This is a final order but does not close the above-captioned case.**

Dated: June 21, 2024                           s/Thomas L. Ludington
                                               THOMAS L. LUDINGTON
                                               United States District Judge

---

[4] As explained *supra* pg. 5, n. 2, all claims against Defendant Equifax are stayed pending the certification of a putative class action in the Northern District of Georgia.